UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| P&F USA, Inc., <br><br>                      Plaintiff,<br><br>              v.<br><br>Gibson Innovations Ltd. (formerly WOOX Innovations Ltd.) and Gibson Innovations USA, Inc.,<br><br>                      Defendants. | Civil Action No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

P&F USA, Inc., by and through its attorneys, as and for its Complaint against Defendants Gibson Innovations Ltd. (formerly WOOX Innovations Ltd.) and Gibson Innovations USA, Inc., alleges as follows:

## NATURE OF THE ACTION

1. This is an action for breach of contract.

2. Plaintiff seeks to collect monies owed by Defendants Gibson Innovations Ltd. (formerly WOOX Innovations Ltd.) and Gibson Innovations USA, Inc. to P&F USA, Inc. in an amount which is not less than $4,823,648.98.

3. The activities giving rise to the causes of action are ongoing. As such, damages continue to accrue.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is an action between a citizen of Georgia and citizens of Delaware/Tennessee (Gibson Innovations USA, Inc.) and Hong Kong (Gibson Innovations Ltd.) and the amount in

controversy exceeds $75,000.

5. This court has personal jurisdiction over the parties and venue in this district is proper under 28 U.S.C. § 1391. Further, the Parties contractually consented to the jurisdiction of this Court and this venue in the event of any dispute arising under or in connection with the agreement and waived any right to assert lack of personal jurisdiction or improper venue.

6. All Parties have contractually agreed that the agreements shall be governed and interpreted according to the laws of the State of New York.

## THE PARTIES

7. Plaintiff, P&F USA, Inc. ("P&F") is a company incorporated under the laws of the State of Georgia, having its principal place of business at 2555 Marconi Drive, Suite 300, Alpharetta, Georgia 30005. P&F is a wholly owned subsidiary of Funai North America, Inc.

8. P&F was founded in 2008 as the sales organization for Funai to sell Philips branded consumer electronics products.

9. Upon information and belief, Defendant Gibson Innovations Ltd. is a corporation organized and existing under the laws of Hong Kong, with its principal place of business at 5/F, Philips Electronics Building, 5 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong. Upon further information and belief, Gibson Innovations Ltd. is a wholly owned subsidiary of Gibson Brands Inc.

10. Upon information and belief, Defendant Gibson Innovations USA, Inc. is a Delaware corporation with its principal place of business at 309 Plus Park Boulevard, Nashville, Tennessee 37217. Upon further information and belief, Gibson Innovations USA, Inc. is a wholly owned subsidiary of Gibson Brands Inc.

**FACTUAL ALLEGATIONS**

11. While not parties to this litigation, the following entities (some of which are now defunct) are identified in the relevant documents. They are identified to provide a more complete understanding of the underlying facts and relationships of the parties and the context in which the current dispute arose.

12. Funai Electric Co., Ltd. (hereinafter "Funai") is a corporation organized under the laws of Japan with a place of business at 7-7-1 Nakagaito, Daito City, Osaka 574-0013, Japan.

13. Funai North America, Inc. is a company incorporated under the laws of the State of Delaware, having its principal place of business at 19900 Van Ness Avenue, Torrance, California 90501. Funai North America, Inc. is a wholly owned subsidiary of Funai Electric Co., Ltd.

14. P&F Mexico, Inc. is a company incorporated under the laws of Mexico, having its principal place of business at Av. la Palma No. 6, Col. San Fernando la Herradura, Huixquilucan, Estado de Mexico 52787 Mexico (hereinafter referred to as "P&F Mexico").

15. Upon information and belief, Gibson Brands Inc. is a Delaware corporation with its principal place of business located in Nashville, Tennessee.

16. Upon information and belief, Philips Consumer Lifestyle is a business division of Philips Electronics North America Corporation ("Philips N.A."), a corporation organized and existing under the laws of Delaware. Upon further information and belief, Philips Consumer Lifestyle has its principal place of business at 1600 Summer Street, Stamford, Connecticut 06905 and Philips N.A. has its principal place of business at 3000 Minuteman Road, Andover, Massachusetts 01810.

17. Upon information and belief, Koninklijke Philips Electronics N.V. (NYSE: PHG, AEX: PHIA) (also known as "Royal Philips") ("Philips") is a company incorporated in The Netherlands and is headquartered in Breitner Center, Amstelplein 2, Amsterdam, 1096 BC, Netherlands. Upon further information and belief, Philips is the parent company of Philips N.A.

18. Upon information and belief, Koninklijke Philips Electronics N.V. changed its name to Koninklijke Philips N.V. in 2013.

19. Upon information and belief, Philips Electronics Hong Kong Limited is a Business Group under Koninklijke Philips N.V. and has its registered office at 5F, Science Park East Avenue, New Territories, Hong Kong.

20. Upon information and belief, Koninklijke Philips N.V. established WOOX Innovations Ltd. ("WOOX") as a standalone subsidiary in 2013. Upon further information and belief, Philips Electronics Hong Kong Limited contributed the assets/liabilities forming WOOX.

21. Upon information and belief, WOOX was a corporation organized and existing under the laws of Hong Kong, with its principal place of business at 5th Floor, Philips Electronics Building, 5 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong.

22. Upon information and belief, Philips sold WOOX to Gibson Brands Inc. in June 2014. Upon further information and belief, WOOX was a wholly owned subsidiary of Gibson Brands Inc.

23. Upon information and belief, WOOX was renamed in May 2015; the resulting entity was named Gibson Innovations Ltd.

24. Upon information and belief, in April 2015, Gibson Brands Inc. launched a dedicated sales and marketing organization, Gibson Innovations USA, Inc., to market select products in the U.S.

25. Upon information and belief, the forgoing parties, their relationships and the timing of the identified changes in ownership and/or identity are accurately summarized in the following depiction:



**The Contracts From Which The Current Dispute Arises**

26. Philips owns numerous trademarks covering a broad array of consumer electronics products. Philips manufactures and sells products worldwide under the Philips brand.

27. On or about August 4, 2008, Philips entered into a Trademark License Agreement (hereinafter "TLA") with Funai. The TLA granted Funai and its Affiliates a license to use Philips' trademarks on certain consumer electronics products and associated materials within the United States and Canada. Schedule F of the TLA identifies P&F as an Affiliate licensed under the TLA.

28. The TLA also provided for the creation of several agreements which were executed by the parties to the TLA or their affiliates, including:

    a. a Product Supply Agreement between Philips Consumer Lifestyle and P&F;

  b. an Intellectual Property License and Non-assertion Agreement between Philips and Funai;

  c. a Design and Development Agreement between Philips Electronics Singapore Private Limited and Funai;

  d. a Consumer Care Agreement between Philips N.A. and P&F;

  e. a Bill of Sale from Philips N.A. to P&F for miscellaneous assets;

  f. a Compliance with Applicable Electronic Waste Laws Agreement between Philips N.A., P&F and Funai Corporation, Inc. ("Funai Corp.");

  g. a Transition Services Agreement between Philips N.A., P&F and Funai Corp.;

  h. a Letter Agreement between Philips and Funai with respect to reimbursement by Philips of royalty differentials; and

  i. a Letter Agreement between Philips and Funai with respect to secondary trademarks.

  29. The TLA was amended eight (8) times. The Second Amendment added Mexico as a licensed territory. Of particular relevance to the issues presented in this action, the Seventh Amendment extended the term of the TLA until December 31, 2018.

  30. Philips Consumer Lifestyle (a business division of Philips N.A.) and P&F entered into a Supply Agreement effective on August 4, 2008. Pursuant to the Supply Agreement, Philips Consumer Lifestyle would cause the design and manufacture of Philips branded products, and would supply, and sell Philips branded products to P&F, which P&F would then ultimately supply to retailers.

31.     Philips N.A., Funai Corp. and P&F entered into a Transition Services Agreement effective on August 4, 2008.  The Transition Services Agreement provided for, *inter alia*, Philips N.A. to provide consumer care/after sales service and support for products sold under the Supply Agreement during the transition period.

32.     In furtherance of the Trademark License Agreement, Philips Consumer Lifestyle (a business division of Philips N.A.) and P&F entered into a Consumer Care Agreement (hereinafter "CCA-I") on or about August 4, 2008.  The purpose of the CCA-I was to ensure that consumers received the level of customer care—also referred to as after sales service and support—that Philips required.

33.     The CCA-I was amended four (4) times.  The Fourth Amendment, dated September 1, 2012, *inter alia*, expanded the scope of products regulated by the CCA-I to include Distributor Products, which are defined as products specified in Annex A of the agreement entitled "Exclusive Distributor Agreement (For The Territory)."

34.     On or about September 1, 2012, P&F and Philips Electronics Hong Kong Ltd., a business group of Philips, entered into the Exclusive Distributor Agreement (For The Territory). This agreement was then amended on September 2, 2012 to extend the Territory for certain licensed products.  Philips subsequently assigned all of its rights and obligations under the Exclusive Distributor Agreement (For The Territory) to WOOX effective November 4, 2013.

35.     WOOX and P&F entered into a Consumer Care Agreement (hereinafter "CCA-II") effective November 4, 2013.  The CCA-II provided, *inter alia*:

- P&F was required to continue to fulfill its obligations owed to consumers under the CCA-II for the time and under the stems set forth in Section 1.4 of CCA-II;

- P&F was responsible for in-warranty and out-of-warranty after sales services for Products sold and distributed under the Exclusive Distributor Agreement (For The Territory) for the time and under the stems set forth in Section 3.1 of CCA-II;

- P&F was to exclusively use WOOX spare parts and components ("Spare Parts") as long as WOOX is in a position to supply, and does supply to P&F Spare Parts sufficient in quality and quantity. If WOOX was unable to supply such Spare Parts, then WOOX was required to use its best endeavors to assist P&F in obtaining sufficient spare parts and components elsewhere. (*See* Section 6.1 of CCA-II)

36. The CCA-II was amended one time to modify the duration of time P&F would provide after sales services pursuant to the terms of Section 4.2 of CCA-II.

37. WOOX and P&F entered into a Return And Reverse Logistics Agreement effective April 1, 2015. Pursuant to this agreement, WOOX appointed P&F as its service center provider for North America. Appendix I of the Return And Reverse Logistics Agreement detailed the return procedures to be followed by P&F.

38. Upon information and belief, in or about 2014, Philips sold its audio, video, multimedia and accessories business (WOOX) to Gibson Brands Inc. Thereafter, WOOX, P&F, and Gibson Innovations USA, Inc. entered into a Transition Agreement effective as of November 3, 2014. The Transition Agreement detailed, *inter alia*, how P&F would transition distribution operations to Gibson Innovations USA, Inc. and further provided for the contemporaneous execution of the Exclusive Distributor Agreement wherein P&F would be permitted exclusive distribution rights to four specific customer accounts (collectively the "P&F Reserved Accounts").

39. P&F and Gibson Innovations USA, Inc. entered into the Exclusive Distributor Agreement on November 3, 2014, with an effective date of April 1, 2015.  At that time, the P&F Reserved Accounts were not subject to any distributor agreement with Philips or Philips' Affiliates.  This agreement detailed, *inter alia*, how responsibility for the P&F Reserved Accounts would be transitioned from P&F to Gibson Innovations USA, Inc. upon expiration of the Exclusive Distributor Agreement.

40. The Exclusive Distributor further set forth the mutually agreed upon phase out terms in Section 2.7 of Exclusive Distributor Agreement).

41. P&F, P&F Mexico, Funai, and Philips entered into a Consumer Care Agreement (hereinafter "CCA-III") dated and effective July 1, 2015.  The CCA-III detailed, *inter alia*, the after sales service and support obligations of P&F.

## P&F Reserved Account Exclusivity

42. In May 2014, P&F negotiated and entered into an exclusive Supplier Agreement with one of the P&F Reserved Accounts for the display of products in its stores.  The term of this agreement was from October 2014 through October 2016 (25 months).  In order to maintain confidentiality, P&F has not disclosed the name of that entity in this Complaint.  The party is known to the Defendants as the parties have discussed this dispute prior to filing. The party is also know to the Defendants by the date of the agreement.   For the avoidance of doubt, the party was identified in, for example, the email dated November 22, 2016, from Mr. Todd Richardson of Gibson Innovations USA to Mr. Rick Dorl (of P&F) and Mr. Bruce Mitchell (of Gibson Innovations USA). The entity in question is referred to hereinafter as "*Reserved Account C*".

43. As noted in paragraph 29 *supra*, the Seventh Amendment extended the Term of the TLA until December 31, 2018, thereby securing P&F's authorization to sell Philips branded products to, *inter alia*, Reserved Account C until December 31, 2018.

44. As noted in paragraph 38 *supra*, pursuant to the Transition Agreement, the parties agreed to, *inter alia*, "execute a new distributor agreement wherein…a process will define the method to transition the business under the P&F Reserved Accounts to WOOX after December 31st…." *See* Transition Agreement, third "Whereas" clause.

45. As noted in paragraph 39 *supra,* the Exclusive Distributor Agreement provided the methodology for transitioning those businesses encompassed by the P&F Reserved Account to WOOX.

46. Pursuant to the Supplier Agreement with *Reserved Account C*, P&F had paid certain upfront fees for product placement – *i.e.*, store shelf space, organization, display, etc.

47. The Transition Agreement, to which Gibson Innovations Ltd. and Gibson Innovations USA, Inc. are parties (collectively "Gibson Innovations"), addressed how to allocate the upfront expense between P&F and Gibson Innovations. Section 1(a)(v) requires WOOX to pay its share of slotting fees commensurate with the benefits it receives under the Transition Agreement.

48. Attachment A to the Transition Agreement provides the agreed upon term with respect to the subject slotting fees.

49. As indicated in Attachment A, to the Transition Agreement the "slotting fees" included "one time fees," the Initial Cost of which amounted to $3,142,000. The prorated share of the "one time fees" taxed to WOOX was "TBD" (*i.e.*, to be determined) as was P&F's portion thereof. The allocations of these one time fees were subject to fair share adjustment, as

of September 2015, on proportional allocation based on sales benefit to be derived by each party **on a going forward basis**." (emphasis added).

50. The "on a going forward basis" language on its face encompasses the entire term of the TLA being used in the cost allocation calculation, which in accordance with the TLA, extended through December 31, 2018 (*i.e.*, the expiration of the TLA).

51. Upon information and belief, the Philips brand products continue to be supplied to *Reserved Account C* by Gibson Innovations USA, Inc.

52. In total, there were fifty-one (51) months between the sales start date at *Reserved Account C* and the termination date of the TLA – *i.e.*, October 2014 through December 2018 ("the Going Forward Period"). During the Going Forward Period, P&F benefitted for fifteen (15) of the fifty-one (51) months (*i.e.*, October 2014 through December 2015) and Gibson benefitted and will continue to benefit for thirty-six (36) of the fifty-one (51) months (*i.e.*, January 2016 through December 2018). Accordingly, the prorated slotting fees cost amounts to 29.4% for P&F (*i.e.*, 15/51 months = 29.4%) and 70.6% for Gibson Innovations (*i.e.*, 36/51 months = 70.6%).

53. Gibson Innovations is contractually obligated to repay to P&F the prorated share of the upfront slotting fees that Gibson Innovations received the benefit of. Thus, Gibson owes P&F 70.6% of the $3,142,000 upfront fee P&F paid, which amounts to $2,199,400.

### "1225" Returns—Legacy Models Products

54. The financial responsibility of the after sales service and support to be provided to customers of so-called "Legacy Models Products" by P&F is addressed in both the CCA-I and CCA-II, under which Gibson Innovations was contractually obligated to reimburse P&F for after sales service and support of "Legacy Models Products."

11

55. "Legacy Models Products" encompass those models of products that are identified on Annex A to the Exclusive Distributor Agreement (For The Territory) that were sold under the "Philips" trademark by WOOX or Philips and which were produced before week 25 of production year 2012. The term "1225" is an abbreviation that signifies year 2012, week 25.

56. Upon information and belief, Philips Electronics Hong Kong Limited assigned all rights and obligations under the Exclusive Distributor Agreement (For The Territory) to WOOX Innovations Ltd.

57. The CCA-II and Transition Agreement acknowledged that Philips assigned all of its rights and obligations under the Exclusive Distributor Agreement (For The Territory) to WOOX Innovations Ltd.

58. In general, the CCA-I and the CCA-II provide that while P&F was obligated to accept and process all product returns, Sections 15(5d.iv) and (5d.ix) of the Fourth Amendment to the CCA-I and Sections 3.8 through 3.12 of the CCA-II financially obligated WOOX for the costs incurred with respect to the returns of:

   a. any product manufactured PRIOR to week 25 of 2012;

   b. any product that was never sold by P&F;

   c. any product from a non-authorized distributor retailer; **and**

   d. any product returned on a WOOX issued RMA ("return material authorization").

While P&F fulfilled its obligations with respect to the product returns, WOOX failed to do so.

59. This arrangement was maintained throughout and is detailed again in Sections 3.8 through 3.14 of the CCA-II.

60. The applicable procedure is explained in detail in Schedule 3 to the CCA-II, which is entitled "Legacy Costs Related To Distribution Products For Call Center."

61. Schedule 3 of CCA-II also provides that Gibson Innovations (*i.e.*, WOOX) is obligated to pay P&F within 60 days of receipt of invoicing the product returns that P&F processed but which were the financial responsibility of Gibson Innovations.

62. In total, the costs to P&F for, *inter alia*, reimbursing retailers for returned products, processing returned products, liquidating products, repairing/replacing products and warehousing of products that Gibson Innovations (*i.e.*, WOOX) is obligated to pay amounted to $2,195,459 as of April 30, 2017.

63. P&F demanded payment from Gibson Innovations by issuing invoice number 6302014 which was communicated to WOOX on June 30, 2014.

64. P&F issued a second invoice (number 9302014) which was communicated to WOOX on September 30, 2014.

65. The total amount of both invoices was $1,637,700

66. On January 10, 2017, P&F demanded payment from Gibson Innovations of the then total amount due, $2,157,153.00.

67. Thus, far more than the contractual 60 days have passed since P&F demanded payment and Gibson Innovations has not made any payment, much less payment in full.

**P&F Reserved Account Returns (CONQ Charge)**

68. Pursuant to the terms of Exclusive Distributor Agreement entered into on November 3, 2014, P&F was obligated to manage the P&F Reserve Accounts during the time period from April 1, 2015 through December 31, 2015 ("Transition Period").

69. After December 31, 2015, Gibson Innovations was obligated to manage the P&F Reserved Accounts.

13

70. During the Transition Period, P&F was obligated to purchase Philips branded products from Gibson Innovations and then supply those products to the P&F Reserve Accounts.

71. The Transition Agreement obligated Gibson Innovations (at that time WOOX) and P&F to cooperate to facilitate the transition of the business from P&F to Gibson Innovations by the Transition Date (*i.e.*, December 31, 2015).

72. The Transition Agreement also provided for a lump sum payment by P&F to Gibson Innovations as a "Warranty Buyout Payment." The intended purpose of the Warranty Buyout Payment was to allow P&F to discontinue all warranty support for Products as of the Transition Date with the exception of the P&F Reserved Accounts

73. The Warranty obligation for the P&F Reserved Accounts was addressed in the Exclusive Distributor Agreement between P&F and Gibson Innovations USA, Inc., which became effective April 1, 2015.

74. During the Transition Period, P&F purchased products from Gibson Innovations. The price Gibson Innovations charged P&F included an additional specified percentage of the purchase price on each product (called the "Cost of Non-Quality charge" or "CONQ") to cover the cost of all returns and warranties for the P&F Reserved Accounts.

75. P&F met all of its warranty obligations.

76. Initially, Gibson Innovations accepted and processed the returns and warranties for the P&F Reserved Accounts.

77. In or around March 2016, in violation of its contractual obligations, Gibson Innovations began to refuse the returns and informed retailers to send the returns to P&F.

78. In or around June 2016, Gibson Innovations advised P&F that it could not and/or would not provide P&F with service components that would enable P&F to repair returned merchandise, thereby, making it impossible to resell returned products.

79. Thus, P&F has been forced to continue processing warranty claims and return obligations for the P&F Reserved Accounts after the Transition Date of December 31, 2015, to mitigate the harm that would otherwise occur to its business as a result of Gibson Innovations' breach.

80. On January 10, 2017, P&F demanded payment of $428,789.98 for the costs P&F wrongfully incurred as a result of Gibson Innovations' breach of contract.

81. P&F continues to wrongfully incur these expenses. The current amount owed to P&F is no less than $428,789.98.

## FIRST CLAIM
(Breach of Transition Agreement by Gibson Innovations Ltd.)

82. P&F repeats and realleges paragraphs 1 through 81 as if fully set forth herein.

83. The Transition Agreement is a valid, binding and enforceable agreement between P&F, Gibson Innovations Ltd. (formerly WOOX) and Gibson Innovations USA, Inc.

84. P&F performed all of its obligations under the contract.

85. Gibson Innovations Ltd. was contractually obligated to pay the prorated amount of those slotting fees, allocated on the basis of the portion of the time which Gibson Innovations Ltd. benefitted – *i.e.*, 70.6% of the *Reserved Account C* slotting fees. Gibson Innovations Ltd. breached its obligations by failing to do so.

86. P&F has provided written demands to Gibson Innovations Ltd., demanding payment of its allocated portion of the *Reserved Account C* slotting fees; Gibson Innovations

Ltd. has and continues to refuse payment, thereby breaching its contractual obligations under the Transition Agreement.

87. P&F has been damaged by this breach in an amount to be determined at trial, but in no event less than $2,199,400 plus pre- and post-judgment interest.

### SECOND CLAIM
(Breach of Transition Agreement by Gibson Innovations USA Inc.)

88. P&F repeats and realleges paragraphs 1 through 87 as if fully set forth herein.

89. The Transition Agreement is a valid, binding and enforceable agreement between P&F, Gibson Innovations Ltd. (formerly WOOX) and Gibson Innovations USA, Inc.

90. P&F performed all of its obligations under the contract.

91. Gibson Innovations USA, Inc. was contractually obligated to pay the prorated amount of those slotting fees, allocated on the basis of the portion of the time which Gibson Innovations Ltd. benefitted – *i.e.*, 70.6% of the *Reserved Account C* slotting fees. Gibson Innovations Ltd. breached its obligations by failing to do so.

92. P&F has provided written demands to Gibson Innovations USA Inc., demanding payment of its allocated portion of the *Reserved Account C* slotting fees; Gibson Innovations USA, Inc. has and continues to refuse payment, thereby breaching its contractual obligations.

93. P&F has been damaged by this breach in an amount to be determined at trial, but in no event less than $2,199,400 plus pre- and post-judgment interest.

### THIRD CLAIM
(Breach of Consumer Care Agreement (CCA-II) by Gibson Innovations Ltd.)

94. P&F repeats and realleges paragraphs 1 through 93 as if fully set forth herein.

95. The Transition Agreement is a valid, binding and enforceable agreement between P&F and Gibson Innovations Ltd.

96. P&F performed all of its obligations under the contract including providing after sales service and support.

97. Gibson Innovations was contractually obligated to reimburse P&F the cost of providing after sales service and support to any product manufactured PRIOR to week 25 of 2012; any product that was never sold by P&F; any product from a non-authorized distributor retailer; and/or any product returned on a WOOX issued RMA.

98. Gibson Innovations failed to perform its contractual obligations.

99. P&F has demanded payment of $2,157,153 in writing on January 10, 2017. The amount due continues to accrue and as of April 30, 2017 was $2,195,459

100. Gibson Innovations refuses to pay the amount due, which refusal constitutes a breach of contract.

101. P&F has been damaged by Gibson Innovations' breach of contract in an amount to be determined at trial, but in no event less than $2,195,459 plus pre- and post-judgment interest.

**FOURTH CLAIM**
(Breach of Exclusive Distributor Agreement by Gibson Innovations USA, Inc.)

102. P&F repeats and realleges paragraphs 1 through 101 as if fully set forth herein.

103. The Exclusive Distributor Agreement is a valid, binding and enforceable agreement between P&F and Gibson Innovations USA, Inc.

104. P&F performed all of its obligations under the contract, including the payment of a CONQ on all product purchases from Gibson Innovations USA, Inc.

105. Gibson Innovations USA, Inc. was contractually obligated to provide after sales service and support after December 31, 2015.

106. Gibson Innovations USA, Inc. failed to provide after sales service and support after December 31, 2015, thereby breaching its obligations and the Exclusive Distribution Agreement.

107. P&F provided after sales service and support after December 31, 2015.

108. Gibson Innovations USA, Inc. refused to reimburse P&F for the costs of such service and support.

109. P&F has been damaged by Gibson Innovations USA, Inc.'s breach of contract in an amount to be determined at trial, but in no event less than $428,789.98 plus pre- and post-judgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, P&F respectfully demands judgment on its Complaint as follows:

A. On the First Claim, a finding that Gibson Innovations Ltd. has breached the Transition Agreement;

B. On the First Claim, an award in an amount to be determined at trial, but in no event less than $2,199,400, plus both pre- and post-judgment interest;

C. On the Second Claim, a finding that Gibson Innovations USA has breached the Transition Agreement;

D. On the Second Claim, an award in an amount to be determined at trial, but in no event less than $2,199,400, plus both pre- and post-judgment interest;

E. On the Third Claim, a finding that Gibson Innovations Ltd. has breached the CCA-II;

F.  On the Third Claim, an award in an amount to be determined at trial, but in no event less than $2,195,459, plus both pre- and post-judgment interest;

G.  On the Fourth Claim, a finding that Gibson Innovations USA, Inc. has breached the Exclusive Distributor Agreement;

H.  On the Fourth Claim, an amount to be determined at trial, but in no event less than $428,789.98, plus both pre- and post-judgment interest;

I.  An award to P&F against Defendants for P&F's attorneys' fees, costs and expenses;

J.  An award to P&F granting it such other and further relief as may be just and proper.

Dated:  October 19, 2017          Respectfully submitted,

By: /s/ Patrick J. Hoeffner
Marc R. Labgold, Ph.D.
D.C. Bar No. 474969
mlabgold@labgoldlaw.com
Patrick J. Hoeffner
New York Bar No. 2801462
phoeffner@labgoldlaw.com
NAGASHIMA, HASHIMOTO & YASUKUNI
12005 Sunrise Valley Drive, Suite 203
Reston, Virginia 20191
Tel: (703) 901-8860
Fax: (877) 401-8855

Takaaki Nagashima
New York Bar No. 1632793
nagashima@nandhlaw.com
Yugo Nagashima
ynagashima@nandhlaw.com
New York Bar No. 5110325
NAGASHIMA, HASHIMOTO & YASUKUNI
Hirakawa-cho KS Bldg., 2nd Floor
2-4-14 Hirakawa-Cho, Chiyoda-ku
Tokyo 102-0093 Japan
Tel:  +81-3-3239-5750
Fax:  +81-3-3239-8538
**Attorneys for Plaintiff P&F USA, Inc.**

**DEMAND FOR A JURY TRIAL**

Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38 on all issues so triable.

Dated:  October 19, 2017            Respectfully submitted,


By: */s/ Patrick J. Hoeffner*
Marc R. Labgold, Ph.D.
D.C. Bar No. 474969
mlabgold@labgoldlaw.com
Patrick J. Hoeffner
New York Bar No. 2801462
phoeffner@labgoldlaw.com
NAGASHIMA, HASHIMOTO & YASUKUNI
12005 Sunrise Valley Drive, Suite 203
Reston, Virginia 20191
Tel: (703) 901-8860
Fax: (877) 401-8855

Takaaki Nagashima
New York Bar No. 1632793
nagashima@nandhlaw.com
Yugo Nagashima
ynagashima@nandhlaw.com
New York Bar No. 5110325
NAGASHIMA, HASHIMOTO & YASUKUNI
Hirakawa-cho KS Bldg., 2nd Floor
2-4-14 Hirakawa-Cho, Chiyoda-ku
Tokyo 102-0093 Japan
Tel:  +81-3-3239-5750
Fax:  +81-3-3239-8538

***Attorneys for Plaintiff P&F USA, Inc.***